### HART et al. v. HAMRA et al.

No. 11610—Opinion Filed June 26, 1923.

**1. Injunction—Action on Bond—Sufficiency of Petition.**

A petition on an injunction bond against the sureties, conditioned that plaintiff will pay to the parties enjoined such damages, including a reasonable attorney fee, as they may sustain by reason of the issuing of said injunction, if it should be finally decided that the injunction ought not to have been granted, which fails to allege that plaintiff in the injunction suit has not paid the damages, does not state a cause of action.

**2. Pleading—Overruling Demurrer to Petition—Waiver of Exception by Answer.**

An exception to an order overruling a demurrer to a petition, on the ground that facts sufficient to state a cause of action are not alleged, is not waived by filing an answer in the cause.

**3. Same—Action on Injunction Bond.**

Record examined, and held that the defendants did not waive their objection to the petition of the plaintiffs by reason of the stipulation consenting to the overruling of a former demurrer.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Pottawatomie County; Hal Johnson, Judge.

Action by H. J. Hamra and another against U. S. Hart and others to recover on an injunction bond. Judgment for plaintiffs, and defendants bring error.

Goode & Dierker, for plaintiffs in error.

McDougal, Allen & Pryor, for defendants in error.

Opinion by FOSTER, C. This action was commenced in the district court of Pottawatomie county, Okla., by H. J. Hamra and Jack Spain, sheriff of Oklahoma county, Okla., defendants in error, plaintiffs below, against Joseph E. Fitzpatrick, Laura E. Fitzpatrick, U. S. Hart, and J. F. Kerker, defendants below, to recover the sum of $1,000 on an injunction bond, the Fitzpatricks being the principal obligors on the

bond, and Hart and Kerker being sureties. No answer was filed in the court by the Fitzpatricks, nor any judgment ever rendered against them, the issues being finally joined between the plaintiffs and the defendants Hart and Kerker, as sureties, the plaintiffs in error here. For convenience the parties will be referred to as they appear in the court below.

The facts as disclosed by the record, necessary for a proper determination of the question presented by the appeal, are as follows:

On the 21st day of January, 1912, the defendants procured a temporary injunction against plaintiffs, enjoining Jack Spain, as sheriff of Oklahoma county, from levying an execution (issued upon a judgment rendered in Pottawatomie county in favor of H. J. Hamra against Joseph E. Fitzpatrick and Laura E. Fitzpatrick) on certain lands belonging to the Fitzpatricks, located in Oklahoma county. Before issuing said injunction, the Fitzpatricks, as plaintiffs in said injunction suit, were required to give a bond in the sum of $1,000, which, omitting the caption, in words and figures is as follows:

"Whereas, the said Joseph E. Fitzpatrick and Laura E. Fitzpatrick, have obtained an order of injunction against H. J. Hamra and Jack Spain, sheriff of Oklahoma county, Okla., in a civil action pending in said above entitled court, wherein the above entitled parties are plaintiff and defendant as set forth in said title.

"Now therefore, we Joseph E. and Laura E. Fitzpatrick, as principals, and U. S. Hart and J. F. Kerker, as sureties, hereby undertake in the sum of $1,000 that the plaintiff shall pay to the said defendant any damages including a reasonable attorney's fee, he may sustain by reason of the issuing of said injunction if it should be finally decided that the said injunction ought not to have been granted.

"Joseph E. Fitzpatrick,
"Laura E. Fitzpatrick,
"By Cassidy & Reasor, Attys.
"U. S. Hart,
"J. F. Kerker.

"Taken, subscribed and acknowledged this 21st day of January, A. D. 1912.

"Ross F. Lockridge,
"County Judge."

On the 14th day of June, 1912, upon a hearing to make said injunction permanent, the district court of Pottawatomie county rendered its judgment, perpetually enjoining said sheriff, and H. J. Hamra from levying upon and selling the lands of the said Fitzpatricks.

Hamra appealed to the Supreme Court. On the 18th day of January, 1916, the Supreme Court reversed the district court of Pottawatomie county and ordered said injunction dissolved. Whereupon plaintiffs instituted a suit to recover on said bond and filed their petition, omitting the caption, as follows:

"That your plaintiff H. J. Hamra, is the real and only party plaintiff in interest herein; that the said Jack Spain, sheriff of Oklahoma county, was and is only a nominal party and was made party plaintiff by reason of having in his hands and attempting to execute a certain execution in favor of your plaintiff, H. J. Hamra, on certain lots and lands located in Oklahoma county, state of Oklahoma; that in a certain action and cause pending in this court entitled Joseph E. Fitzpatrick and Laura E. Fitzpatrick, plaintiff, v. H. J. Hamra and Jack Spain, sheriff of Oklahoma county, Oklahoma, defendants, and being No. 5323 of the causes pending in this court, and have for its purpose the obtaining of injunctive relief against the said H. J. Hamra, and said Jack Spain aforesaid, the said defendants, Joseph E. Fitzpatrick and Laura E. Fitzpatrick, U. S. Hart, J. F. Kerker, did, pursuant to order of this honorable court, in said cause, make, execute and deliver to Ross Lockridge, county judge of Pottawatomie county, their certain injunction bond in the penal sum of $1,000; that said bond contains a condition in substance, as follows: 'Now, therefore, we, Joseph E. Fitzpatrick and Laura E. Fitzpatrick as principals, and U. S. Hart and J. F. Kerker, as sureties, hereby undertake in the sum of $1,000 that the plaintiff shall pay to the said defendant any damages, including a reasonable attorney's fee, he may sustain by reason of the issuing of said injunction if it should be finally decided that the said injunction ought not to have been granted.'

"That a true and correct copy of said bond is hereto attached, made a part hereof and marked exhibit 'A.'

"That the condition and obligation of said bond aforesaid has been violated, breached and broken in the following particulars: that is to say, that in a certain action pending in this court entitled H. J. Hamra v. Joseph E. Fitzpatrick, being cause numbered 5064 of the causes pending in this court, and the said plaintiff, H. J. Hamra, having on or about the 4th day of March, 1911, obtained judgment against the said Joseph E. Fitzpatrick and did thereafter cause execution to be issued by the clerk of this court and did cause said execution to be placed in the hands of Jack Spain, who was then

and there the duly elected, qualified and acting sheriff of Oklahoma county; that said sheriff did thereupon levy said execution upon the interest of Joseph E. Fitzpatrick in the following described lots and lands in Oklahoma county, state of Oklahoma, to wit: The southwest quarter (1-4) of section 9. township 11 north, range 1 west.

"That said sheriff did cause said lots and lands to be appraised according to law, and did offer said lots and lands for sale for the purpose of satisfying the judgment theretofore obtained as aforesaid; that thereupon, the defendants, Joseph E. Fitzpatrick and Laura E. Fitzpatrick did commence their certain action in the district court of Pottawatomie county having for its purpose the obtaining of an order of injunction enjoining your plaintiff, H. J. Hamra, and the said Jack Spain, sheriff of Oklahoma county, from proceeding with the sale of said property and from proceeding with said execution; that upon the presentation of said matter in said district court of Pottawatomie county, said defendants, Joseph E. Fitzpatrick and Laura E. Fitzpatrick were required to give said above mentioned bond; that in the absence of the judge of the district court from Pottawatomie county, a preliminary order of injunction was obtained from the county court of Pottawatomie county and said county court did approve said bond and preliminary order of injunction was granted by the said county court; that thereafter, on or about the 14th day of June, 1912. judgment was rendered in said cause making said order or injunction permanent; thereafter, the said H. J. Hamra and the said Jack Spain did duly appeal said cause to the Supreme Court of the state of Oklahoma, said cause being numbered in the Supreme Court of the state of Oklahoma 5859 of the causes pending therein: that thereafter, by the consideration of the Supreme Court of the state of Oklahoma and on or about January 18, 1916, said injunction so obtained in the district court of Pottawatomie county was ordered dissolved; that by reason of the granting of said injunction your plaintiffs have been damaged in the following items and in the following particulars, towit:

"That by reason of the levying of said execution, the appraisement of said lands and the petition for sale thereof, costs accrued in the sum of $36, which were paid by your plaintiff. H. J. Hamra. did make four trips to Tecumseh in said Pottawatomie county. for the purpose of attending the trial of said injunction proceedings, and did expend in time and money in making said trips the sum of $100: that your plaintiff. H. J. Hamra. did expend for the casemade on the appeal of said cause to the Supreme Court of the state of Oklahoma. the sum of $60: that he did expend as costs

in said Supreme Court the sum of $25; that he did expend for brief in said Supreme Court the sum of $15; that during the period from the 21st day of January, 1912, until this date, by reason of said injunction said defendants, Joseph E. Fitzpatrick and Laura E. Fitzpatrick have taken the rents and profits of an undivided one-half of said lands belonging to the said Joseph E. Fitzpatrick and have appropriated said rents and profits to their own use; that the reasonable rental of said 80 acres of land is the sum of $80 per year. making a total sum amounting to $320: that for the purpose of defending said action in the district court of Pottawatomie county, and for the purpose of appealing said cause to the Supreme Court of the state of Oklahoma, your plaintiff, H. J. Hamra, did employ the services of counsel, to wit: McDougal & Lytle of Sapulpa, Oklahoma, and Robert Wheeler of Tecumseh. Oklahoma, that said counsel did appear in the district court of Pottawatomie county on six different days in the hearing of the trial of said cause; that the reasonable value of the services rendered, for which your plaintiff should be reimbursed, is the sum of $400 for the trial of said cause in the district court of Pottawatomie county: that the reasonable value of the services performed by said attorneys in the appeal of said cause to the Supreme Court of the state of Oklahoma, is the sum of $250: that your plaintiff is entitled to judgment on said bond in the sum of $1.000 together with interest thereon from and after the 13th day of January, 1916, together with the costs of this action.

"Wherefore, premises considered, plaintiffs pray judgment against the defendants and each of them in the sum of $1,000, together with interest thereon from and after the 19th day of January. 1916, and together with costs of this action."

On the 22nd day of January, 1918, all of the defendants, through their attorneys, Smith & Walker, filed a demurrer to the petition of plaintiffs and thereafter, on the 11th day of April, 1918, a stipulation was filed, signed by McDougal, Lytle & Allen, attorneys for plaintiffs, and Smith & Walker, attorneys for defendants, consenting that the demurrer might be overruled, and allowing 20 days for the defendants to answer.

On the same day. pursuant to said stipulation filed, the trial judge overruled said demurrer and allowed the defendants an exception.

No further appearance was ever made by the Fitzpatricks, the principal obligors, and thereafter, on the 19th day of August, 1919, the defendants, Hart & Kerker. sureties in said bond. through their attorney, Mark

Goode, filed a general demurrer to the petition, omitting the caption, in words and figures, as follows:

1. "That said petition does not state facts sufficient to constitute a cause of action against these defendants in favor of the plaintiff.

2. "That there is a misjoinder of plaintiffs and a misjoinder of causes of action."

No objection to the filing of this demurrer was made by the plaintiff, nor any motion filed to strike said demurrer, and the same was regularly heard and overruled, exceptions taken, and the matter proceeded to trial upon the answer of Hart and Kerker, omitting the caption, in words and figures, as follows:

1. "That they deny all and singular each and every allegation in said petition contained.

2. "That the obligation of these defendants by reason of the bond sued on, if any, is barred by the statute of limitation, for the reason that by the terms of the bond and obligation, they were bound to answer for damages only that accrued by reason of the issuance of the temporary injunction and the judgment rendered on trial of the cause of the district court was made and entered on the 14th day of June, 1912, and thereafter and thereby the district court issued and made permanent an injunction in said cause, thereby ending the obligation of these defendants from and after said date.

3. "These defendants especially deny that they are obligated by reason of the bond or the law applicable to reimburse the said plaintiff in the prosecution or defense of the suit in which said temporary injunction was issued after the trial of the cause in the district court."

On November 8, 1919, the cause was tried to a jury over the objection of the defendants, and the jury returned a verdict against the defendants in the sum of $500; judgment was pronounced upon the verdict and the defendants prosecute this appeal to review said judgment.

Seventeen assignments of error are relied upon for a reversal of this cause, but it is necessary to consider only one, namely: Did the court err in overruling the demurrer of the defendants to the petition of the plaintiff?

This was an action upon a statutory injunction bond. The obligation assumed by the defendants as sureties in the case at bar was that the plaintiffs should pay to the defendants any damages, including a reasonable attorney's fee, they might sustain by reason of the issuing of the injunction, if

it should be finally decided that said injunction ought not to have been granted. The petition does not in any manner attempt to say that the plaintiffs had not paid. Nowhere does the pleader aver failure to comply with the terms of this contract. It is true that he uses the language, "that the condition and obligation of said bond aforesaid has been violated, breached, and broken in the following particulars, that is to say:" and then proceds to set up a history of all the litigation between plaintiffs and the Fitzpatricks, and avers that the Fitzpatricks begun an action in the district court for an injunction; that they were required to give a bond by the district court, and that a preliminary order of injunction was obtained from the county court, and that this injunction was made permanent upon a final hearing; that the case in which the injunction was issued was appealed to the Supreme Court, and that the injunction was ordered dissolved by the Supreme Court; that the plaintiffs in this action were damaged in certain particulars, and then pray for judgment for the amount of damages claimed. It does not attempt to say that the plaintiffs in the injunction suit had not paid the full amount of the damages it is alleged were sustained.

In Van Horn v. Holt et al., 30 Mont. 69, 75 Pac. 680, it is held as follows:

"The complaint on an injunction bond, conditioned for payment of damages suffered by reason of the injunction, if it be decided there was no right thereto, must allege a failure to pay."

In the body of the opinion, the court says:

"The particular objection urged against the complaint is that there is no allegation that the amount of damages claimed to have been suffered by the plaintiff has not been paid. The condition of the injunction bond is 'that in case said injunction shall issue the said plaintiff will pay to the said parties enjoined such damages not exceeding the sum of $300 as such parties may sustain by reason of said injunction, if the said district court finally decide that the said plaintiff was not entitled thereto.' This action is upon the bond, and plaintiff sets forth at length the damages which he suffered by reason of the injunction, but does not say that such damages have not been paid. The gist of the action—that which gives rise to the action—is the failure of Howard or his sureties (appellants here) to pay such damages, or, in other words, the gist of the action is the breach of the contract; and in the absence of an allegation of a failure to pay, there is no allegation of any breach whatever, and consequently nothing which can give rise to an action. This rule seems

to be settled beyond controversy. Curtiss v. Bachman, 84 Cal. 216, 24 Pac. 379; same case on second appeal, 40 Pac. 801; Barney v. Vigoreaux, 92 Cal. 631, 28 Pac. 678; Micheal v. Thomas, 27 Ind. 501; 4 Ency. P. & P. 938, 942; 5 Cyc. 726. The action is analogous to an action on commercial paper, where nonpayment must be alleged (8 Cyc. 136), or to an action on any other form of written contract where the breach must be averred (9 Cyc. 728). The complaint does not state a cause of action, and will not support the judgment."

In the case of Curtiss v. Bachman et al. (Cal.) 40 Pac. 801, the Supreme Court of California, on rehearing, decided in the syllabus as follows:

"A complaint on an injunction bond conditioned that plaintiff will pay to the parties enjoined such damages as they may sustain by reason of the injunction, which fails to allege that plaintiff in the injunction suit has not paid the damages, does not state a cause of action."

This case like the one at bar was an action against the sureties, and the petition went much further than the petition in the instant case, it being alleged among other things as follows:

"That prior to the commencement of this action, plaintiff demanded of the defendant, and each of them, to pay the said amount of said bond and the damages sustained thereunder, to wit: the sum of $5,000; but to pay the same or any part thereof, the defendants, and each of them, refused, and have ever since refused, and still refuse."

The defendants demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action and their demurrer was overruled. From a judgment in favor of defendants, plaintiff appealed and the court in affirming the case said:

"The condition of the undertaking was that 'the said plaintiff will pay' such damages, etc. There is no allegation in the complaint that the plaintiff had not paid, or had failed or refused or neglected to pay, the damages. Nor is there any allegation from which such nonpayment can be implied. But an allegation of nonpayment by the plaintiff was necessary, and without it the complaint was fatally defective. Morgan v. Monzies, 60 Cal. 341; Richards v. Insurance Co., 80 Cal. 505, 22 Pac. 939; Grant v. Sheerin, 84 Cal. 197, 23 Pac. 1094; Curtiss v. Bachman, 84 Cal. 216, 24 Pac. 379; Barney v. Vigoreaux, 92 Cal. 631, 28 Pac. 678."

The following are cases arising on bond suits in which the principle is laid down as stated above: Riggans v. Crain, 86 Ky. 249, 5 S. W. 561; Blakeney v. Ferguson, 18 Ark. 347; Smith v. Gregg, 9 Neb. 212, 2 N. W. 459.

The necessity for an averment of nonpayment by the plaintiffs in the injunction suit is emphasized in the instant case by the fact as disclosed by the record, that no answer was ever filed or issues joined with the Fitzpatricks, as principal obligors in the bond. The undertaking of the sureties, Hart and Kerker, being only an undertaking to pay if the plaintiffs did not pay, and the fact of nonpayment, if such fact existed, being a matter peculiarly within the knowledge of the plaintiffs, we think the defendants, upon reason as well as authority were entitled to this information before they could be called upon to answer the petition. This rule is consonant with both reason and authority and effectually closes the door against any opportunity for collusion between the obligees and the parties primarily liable on the bond.

It is insisted by counsel for plaintiffs, in their brief, that payment in an action on a bond is an affirmative defense and must be expressly pleaded. This contention, however, assumes that the issue of nonpayment has been properly raised by the petition in the instant case and overlooks the essential fault in the petition. If the petition had contained an allegation of nonpayment of the damages by the plaintiffs in the judgment suit, the issue of nonpayment would have been raised, and under well-established rules of pleading, the defendant would not be permitted to controvert this allegation merely by a general denial and would be required to expressly plead payment as an affirmative defense. But this principle of law can have no application to the case at bar where the fact of nonpayment is not alleged in the petition and no issue of nonpayment tendered.

It is next insisted that the defendants waived any defect in the petition by reason of a failure to allege nonpayment by filing an answer in which it is claimed that they negative the fact of payment. We cannot agree with counsel in this contention. The answer filed was a general denial, and pleaded the statute of limitations, neither of which waived or abandoned the objection raised by defendants' demurrer to the petition. The record shows that exceptions were taken to the action of the court in overruling the demurrer and the objection renewed throughout the succeeding stages of the trial whenever the opportunity was presented, and we do not agree that defendants waived or abandoned this objection, because

they were required to file an answer in which other defensive matters were pleaded. Van Horn v. Holt, et al., supra; Simmons v. Chestnut-Gibbons Grocery Co., 70 Oklahoma, 173 Pac. 217.

Plaintiffs finally insist that the defendants waived the objection to the petition by consenting that a general demurrer which had been filed by Smith & Walker, representing all of the defendants, on the 22nd day of January, 1918, might be overruled. The record shows that upon the overruling of this demurrer, the Fitzpatricks, the principal obligors in the bond, entered no further appearance nor filed any further pleading, and that no issues were ever joined with them in the case. Subsequently, the defendants Hart and Kerker, the sureties in the bond, appeared by their attorney, Mark Goode, who theretofore had not appeared as attorney for any of the parties, and without objection on the part of plaintiffs, and on the 19th day of August, 1919, filed their demurrer in which the sufficiency of the petition was challenged. No objection to the power of the court to entertain the second demurrer was raised by the plaintiffs, and we think their objection comes too late at this time, conceding for the sake of argument that the second demurrer was improperly filed.

In view of the fact, however, that the sureties, Hart and Kerker, had apparently not been represented on the hearing of the first demurrer by counsel of their own choosing, and in view of the fact that the Fitzpatricks thereafter dropped out of sight and made no further appearance in the cause, we do not feel that the trial court would have abused its discretion had it set aside the order overruling the first demurrer, so far as Hart and Kerker were concerned, and permitted them to file the demurrer which they did file. In this state of the record, we cannot agree that defendants waived any objection to the petition by reason of the stipulation consenting to the overruling of the first demurrer.

We are, therefore, of the opinion that the demurrer of the defendants to the petition of the plaintiffs should have been sustained on the ground that the petition did not state facts sufficient to constitute a cause of action.

Having found that the court erred in overruling the demurrer of the defendants to the petition, it is unnecessary to consider the other assignments of error. Therefore the judgment of the trial court is reversed, with directions to the court below to sustain the demurrer on the ground herein indicated.

By the Court: It is so ordered.